**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : Case No. 09-10695 (CSS) |
| Anderson News, LLC, | : |
| | : Hearing Date: September 13, 2010 at 11:00 a.m. (EST) |
| Debtor. | : Objection Deadline: September 3, 2010 at 4:00 p.m. (EST) |
| | : |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING FIRST
AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT AND
(II) AMENDING ORDER AUTHORIZING DEBTOR TO
OBTAIN POSTPETITION FINANCING**

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby moves this Court for entry of an order (i) approving the first amendment (the "First Amendment") to the DIP Credit Agreement and (ii) amending the *Order Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364 and 507 (I) Authorizing Debtor (A) To Obtain Postpetition Financing and (B) To Utilize Cash Collateral; and (II) Granting Liens and Adequate Protection and Providing Super Priority Administrative Expense Status* (the "DIP Order") [Docket No. 253]. In support of this motion (the "Motion"), the Debtor respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Motion is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a), 361, 362, 363, 364 and 507 of the Bankruptcy Code.

**BACKGROUND**

**A.     Introduction.**

2. On March 2, 2009, certain petitioning creditors filed an involuntary petition against the Debtor.

3. On December 30, 2009, the Court denied a motion to dismiss [Docket No. 188], entered an Order for Relief under Chapter 7 [Docket No. 189] and converted this case to a case under chapter 11 [Docket No. 190].

4. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or official committee of unsecured creditors has been appointed in this case. On April 20, 2010, the Court entered an order authorizing the appointment of an examiner (the "Examiner") pursuant to section 1104(c)(1) of the Bankruptcy Code (the "Examiner Order") [Docket No. 315].

**B.** **The Debtor's Debts.**

5. On or about September 30, 2004, the Debtor entered into a Revolving Credit Loan Agreement with SunTrust Bank (the "Prepetition Loan"), as administrative agent for the lenders thereunder, pursuant to which the Debtor borrowed funds secured by first priority liens in substantially all of the Debtor's assets including, without limitation, the Debtor's cash collateral (the "Prepetition Collateral"). The Prepetition Collateral does not include the Debtor's interests in litigations and causes of action such as the Antitrust Action (as defined below) or proceeds thereof. On April 28, 2009, Holston Asset Management L.L.C. ("Holston") purchased the SunTrust Bank lien (the "SunTrust Lien") at its then face outstanding amount of $30,515,892.00. Accordingly, Holston is the current holder of the SunTrust Lien as well as the security interests granted pursuant to the SunTrust Lien (Holston, solely in its capacity as lender under the Prepetition Loan, is referred to herein as the "Prepetition Lender").

6. In the ordinary course of its business, the Debtor incurred substantial unsecured obligations to various entities, who fall into three broad categories: (i) magazine publishers,

(ii) book publishers, and (iii) other creditors including providers of SG&A (sales, general and administrative expenses) and retail sellers of books and magazines.

C. **Debtor-in-Possession Financing.**

7. On March 2, 2010, the Court entered the DIP Order approving the debtor-in-possession financing agreement (the "DIP Credit Agreement") between Anderson News, LLC and Holston (the "DIP Lender") in an amount up to $10 million, subject to extension upon further order of the Court. The proceeds of the financing are to be used to fund the Debtor's primary payment obligations, which include payment of the professional fees incurred in its chapter 11 case and the prosecution of its action in the United States District Court for the Southern District of New York (the "Antitrust Action").

8. The DIP Order and DIP Credit Agreement provide that up to $150,000 be made available to pay the fees and expenses for the Examiner's investigation. Specifically, Section 2.2(b) of the DIP Credit Agreement states, in relevant part:

> (i) the Borrower and any Statutory Committee or examiner may prosecute or pursue any claims of Borrower against DIP Lender arising out of or in respect of the Loan or the related finance documents, (ii) any Statutory Committee or examiner may use up to $50,000.00 to fund the investigation of claims the Borrower may have against DIP Lender, and (iii) any Statutory Committee or examiner may use up to $100,000.00 to fund the investigation of claims the Borrower may have against any affiliate of DIP Lender up to an amount of $100,000.00.

9. Paragraph 24 of the DIP Order states, in relevant part:

> (x) funds in an amount not to exceed $50,000 in the aggregate may be used for allowed fees and expenses, of any Statutory Committee, in investigating the validity, enforceability, perfection, priority or extent of the Prepetition Liens or any claims or causes of action of the Debtor or its estate against the Prepetition lender and (y) funds in an amount not to exceed $100,000 in the aggregate may be used for allowed fees and expenses, of any Statutory Committee, in investigating claims or cause of actions

against any of the Prepetition Lender's affiliates, agents, attorneys, advisors, professionals, officers, directors and employees.

10. Pursuant to paragraph 27 of the DIP Order, the DIP Credit Agreement may be amended, modified or supplemented by the parties thereto.

**D.    The Examiner Order.**

11. In March 2010, two of the defendants in the Antitrust Action moved for the appointment of a trustee or examiner [Docket No. 273]. The Debtor consented to the appointment of an examiner in its responsive papers, and with guidance from the United States Trustee for the District of Delaware (the "United States Trustee"), the Debtor and the movants agreed to the form of the Examiner Order.

12. On April 20, 2010, the Court entered the Examiner Order. Pursuant to the Examiner Order, the Examiner shall examine the merits of any and all claims and causes of action held by the Debtor's estate against "insider[s]" and "affiliate[s]" (as those terms are defined in section 101 of the Bankruptcy Code), and otherwise perform the duties of an examiner set forth in sections 106(a)(3) and (a)(4) of the Bankruptcy Code (as limited by the Examiner Order). The Examiner Order originally granted the Examiner 90 days from entry of the Examiner Order to issue his report and recommendations, however on July 16, 2010, with the consent of the Debtor and parties to the Examiner's investigation (Anderson Media Corporation, Northshore Capital LLC, Brookvale Holdings LLC and Holston), the Court entered an order extending this deadline to October 26, 2010 [Docket No. 426].

13. On April 27, 2010, the United States Trustee filed a notice stating that Don A. Beskrone of Ashby & Geddes, P.A. has been appointed as the examiner in this case [Docket No. 320].

14. On June 15, 2010, the Court approved the retention of Ashby & Geddes, P.A. ("Ashby & Geddes") as counsel to the Examiner [Docket No. 383] and FTI Consulting, Inc. ("FTI") as the financial consultant to the Examiner [Docket No. 384]. The Examiner's counsel and financial consultant are to assist the Examiner in carrying out his duties under the Bankruptcy Code and the Examiner Order, completing his investigation and issuing his report.

15. On June 24 and June 29, 2010, respectively, FTI and Ashby & Geddes filed their first monthly fee applications in this case [Docket Nos. 403 and 406]. FTI requested payment of $70,629.00 and Ashby & Geddes requested payment of $94,542.94. The objection deadlines for their first fee applications have already passed, and certificates of no objection have been filed on the docket [Docket Nos. 428 and 436]. The Debtor has paid FTI $56,503.20 and Ashby & Geddes $76,441.74, respectively, which represents 80% of the fees and 100% of the expenses requested in their first monthly applications.

16. FTI filed its second monthly fee application on July 16, 2010 [Docket No. 429]. The Debtor has not yet paid the fees and expenses requested in FTI's second monthly application, as such payment will exceed the $150,000 budget provided by the DIP Order and DIP Credit Agreement. Based on a review of these applications and upon discussions with the Examiner, the Debtor and the DIP Lender, as set forth herein, have voluntarily agreed to significantly increase the Examiner's investigation budget by 300% from $150,000 to $600,000 to allow him to continue his investigation.

**E.  Reservation of Rights.**

17. On August 2, 2010, an order was entered in the Antitrust Action dismissing the complaint with prejudice (the "August 2 Order").

18. The DIP Lender has asserted that the entry of the August 2 Order is a Material Adverse Event and constitutes a default under the DIP Credit Agreement.

5

19. The Debtor intends to take all necessary steps to reverse entry of the Order, including an appeal of the August 2 Order. Thus, the Debtor has not acknowledged that entry of the August 2 Order is a Material Adverse Effect or that there has been a default under the DIP Credit Agreement.

20. To facilitate continuing to provide funds under the DIP Credit Agreement, but without waiving its right to declare a default, the DIP Lender has agreed to forbear and defer from exercising remedies arising based on entry of the August 2 Order to enable the First Amendment to be approved by the Bankruptcy Court. However, the DIP Lender has retained and preserved the right and ability to cease such forbearance and deferral of remedies at any time and for any reason, and the Debtor has retained the ability to challenge such actions if taken.

## **RELIEF REQUESTED**[1]

21. By this Motion, the Debtor seeks entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order") approving the First Amendment to the DIP Credit Agreement, the terms of which have been agreed to between the Debtor and the DIP Lender (attached to the Proposed Order as Exhibit 1) and amending paragraph 24 of the DIP Order.

22. Pursuant to the First Amendment to the DIP Credit Agreement, Section 2.2(b) of the DIP Credit Agreement, as amended, will read as follows (underlined portions reflect changes to the original language):

> Borrower shall not use the proceeds of the Revolving Loan or any Advance to prosecute or otherwise pursue any claims of Borrower against either (i) the Prepetition Lender, (ii) the Original Prepetition Lenders, or (iii) any Affiliates of the Prepetition Lender or the Original Prepetition Lenders (hereafter the Prepetition Lender, Original Prepetition Lenders, and their Affiliates are referred to

---

[1] Any terms not defined herein shall have the meanings assigned to them in the DIP Order and the DIP Credit Agreement.

6

collectively as the "Prepetition Secured Lender") *provided however*, that (i) Borrower and any Statutory Committee or Examiner may prosecute or pursue any claims of Borrower against DIP Lender arising out of or in respect of the <u>Revolving Loan or the DIP Loan Documents, and (ii) Borrower may use proceeds of the Revolving Loan or any Advance up to the aggregate amount of $600,000 (subject to the availability restrictions and the other terms and conditions contained within the DIP Loan Documents) to finance or reimburse the Examiner's costs and expenses in connection with (x) the investigation of claims Borrower may have against DIP Lender, or (y) the investigation of claims Borrower may have against the Prepetition Secured Lender, any Affiliate of DIP Lender, or any insider of Borrower. Nothing herein shall preclude Borrower or Examiner from pursuing or prosecuting claims of Borrower against DIP Lender solely arising out of or in respect of the Revolving Loan or the DIP Loan Documents</u>.

23. In addition, the amended section of paragraph 24 of the DIP Order will read as follows (underlined portions reflect changes to the original language):

> funds in an amount not to exceed <u>$600,000</u> in the aggregate <u>(subject to the availability restrictions and the other terms and conditions contained within the DIP Loan Documents)</u> may be used for allowed fees and expenses, of any Statutory Committee <u>or Examiner</u>, in investigating (x) the validity, enforceability, perfection, priority or extent of the Prepetition Liens or any claims or causes of action of the Debtor or its estate against the Prepetition Lender and/or (y) claims or causes of actions against any of the Prepetition Lender's affiliates, agents, attorneys, advisors, professionals, officers, directors and employees.

24. As stated above, the Debtor has not acknowledged that entry of the August 2 Order is a Material Adverse Effect as defined in the DIP Credit Agreement while the DIP Lender has asserted that it is. Section 1.3 of the First Amendment to the DIP Credit Agreement will provide as follows:

> DIP Lender has asserted that the entry of the August 2, 2010 order (the "*August 2 Order*") in Civil Action No. 09-cv-02227 (PAC) pending in the United States District Court for the Southern District of New York is a Material Adverse Event and constitutes a default under the DIP Loan Documents. By entering into this Amendment, Borrower is not acknowledging that the entry of the

7

> August 2nd Order is a Material Adverse Effect or is a default under the DIP Loan Documents. To facilitate continuing to provide funds under the DIP Credit Agreement, but without waiving the default or its right to declare a default, the DIP Lender has agreed to forbear and defer from exercising remedies arising based on entry of the August 2nd Order, but the DIP Lender retains and preserves the right and ability to cease such forbearance and deferral of remedies at any time and for any reason, and the Debtor retains the ability to challenge such actions if taken.

25. Consistent with the terms of the DIP Credit Agreement, and as stated in Section 1.4 of the First Amendment to the DIP Credit Agreement, the Debtor agrees to pay the DIP Lender upon demand all out-of-pocket costs and expenses and all reasonable attorneys' or other professionals' fees of DIP Lender in connection with the negotiation, documentation, approval and enforcement of the First Amendment. Further, in Section 1.4 of the First Amendment, the DIP Lender requests that, at the DIP Lender's election, the Debtor pay all or a portion of these costs through Advances under the Revolving Loan.

26. The Debtor believes, based on discussions with the Examiner and review of Ashby & Geddes and FTI's fee applications, that the proposed increase in the Examiner's investigation budget from $150,000 to $600,000 is necessary for the investigation to proceed. The Examiner informed the Court at the May 11th status conference that he planned to retain a financial advisor and believed that the current budget would be insufficient to cover those fees and expenses, May 11, 2010 Hearing Transcript 14:8-16:5. The Proposed Order and First Amendment will significantly increase the Examiner's investigation budget. Debtor and DIP Lender believe that $600,000 is a sufficient amount to ensure that the Examiner and his professionals have the resources to properly conduct and complete the investigation within the currently projected timeframe.

## NOTICE

27.  Notice of this Motion has been provided by first class mail to the United States Trustee, counsel for the Prepetition and DIP Lender, the Examiner and all parties in interest that have filed a notice of appearance in this chapter 11 case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtor submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE the Debtor respectfully requests that the Court enter an order in the form attached hereto as Exhibit A and award such other and further relief as may be just and proper.

Dated: August 11, 2010
Wilmington, Delaware

CIARDI, CIARDI & ASTIN

*[signature]*

John D. McLaughlin, Jr. (No. 4123)
919 N. Market Street, Suite 700
Wilmington, Delaware 19801
Tel: (302) 658-1100
Fax: (302) 658-1300
jmclaughlin@ciardilaw.com

-and-

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
David M. Friedman
Adam L. Shiff
Jeffrey R. Gleit
Julia A. Balduzzi
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel to Debtor in Possession*