# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ANDERSON NEWS, LLC, | Case No. 09-10695 (CSS) |
| Debtor. | Relates to Dkt. No. 461 |

## STIPULATED ORDER APPROVING FIRST AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT ON AN INTERIM BASIS

Upon consideration of the August 11, 2010 motion (the "Motion") of the debtor and debtor in possession in the above-captioned case (the "Debtor") for entry of an order approving the First Amendment to the DIP Credit Agreement and amending the *Order Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364 and 507 (I) Authorizing Debtor (A) To Obtain Postpetition Financing and (B) To Utilize Cash Collateral; and (II) Granting Liens and Adequate Protection and Providing Super Priority Administrative Expense Status* (the "DIP Order") [Docket No. 253]; and

Upon the stipulation and consent of the Debtor and Holston Asset Management, LLC (the "DIP Lender"), and based on the representation that this order has been presented to the United States Trustee for the District of Delaware and counsel for American Media, Inc., Curtis Circulation Company, LLC, Time/Warner Retail Sales & Marketing, Inc., Bauer Publishing Company, L.P., and Kable Distribution Services, Inc., and that they did not object to its entry; and after due deliberation and sufficient cause therefore, it is hereby:

ORDERED, ADJUDGED, AND DECREED that:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157.

3. No further notice need be given of the subject of this Order.

4. The Motion is GRANTED an on interim basis as set forth herein.

5. Section 2.2(b) of the DIP Credit Agreement is hereby deleted and replaced with the following:

> (b) Borrower shall not use the proceeds of the Revolving Loan or any Advance to prosecute or otherwise pursue any claims of Borrower against either (i) the Prepetition Lender, (ii) the Original Prepetition Lenders, or (iii) any Affiliates of the Prepetition Lender or the Original Prepetition Lenders (hereafter the Prepetition Lender, Original Prepetition Lenders, and their Affiliates are referred to collectively as the "Prepetition Secured Lender") provided however, that (i) Borrower and any Statutory Committee or other party with standing may prosecute or pursue any claims of Borrower against DIP Lender arising out of or in respect of the Revolving Loan or the DIP Loan Documents, and (ii) Borrower may use proceeds of the Revolving Loan or any Advance up to the aggregate amount of $600,000.00 (subject to the availability restrictions and the other terms and conditions contained within the DIP Loan Documents) to finance or reimburse the fees and expenses of Don A. Beskrone, the duly appointed examiner in this case (the "Examiner"), and his professionals in connection with (x) the investigation of claims Borrower may have against DIP Lender, or (y) the investigation of claims Borrower may have against the Prepetition Secured Lender, any Affiliate of DIP Lender, or any insider of Borrower. The $600,000.00 authorization contained herein may be increased by agreement of the DIP Lender and Borrower in order to pay the allowed fees and expenses of the Examiner, including those of his court authorized professionals, as contemplated in this paragraph. Nothing herein shall preclude Borrower and any Statutory Committee or other party with standing from pursuing or prosecuting claims of Borrower against DIP Lender solely

arising out of or in respect of the Revolving Loan or the DIP Loan Documents.

6. Paragraph 24 of the DIP Order is amended and superseded in its entirety as follows:

> Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out. The DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying the DIP Lender's or the Prepetition Lender's enforcement or realization upon any of the DIP Collateral, once an Event of Default has occurred; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Lender; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Lender; (d) incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Lender, except to the extent permitted under the DIP Agreement, (e) objecting or challenging in any way any claims, liens, DIP Collateral, or the Prepetition Collateral (including the Cash Collateral) held by or on behalf of any of the DIP Lender or the Prepetition Lender, respectively; (f) asserting, commencing or prosecuting any claims or causes of action of the Debtor or its estate, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the DIP Lender or the Prepetition Lender or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; or (g) prosecuting an objection to, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Obligations, the Prepetition Liens, or any other rights or interests of any of the DIP Lender or the Prepetition Lender; provided, however, that funds in an amount not to exceed $600,000.00 in the aggregate (subject to the availability restrictions and the other terms and conditions contained within the DIP Loan Documents) may be used for allowed fees and expenses, of any Statutory Committee or Examiner, in investigating (x) the validity, enforceability, perfection, priority or extent of the Prepetition Liens or any claims or causes of action of the Debtor or its estate against the Prepetition Lender and/or (y) claims Debtor may have against the Prepetition Lender, the DIP Lender, any of the Prepetition Lender's affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, or any insider of Debtor (the "Investigation Budget Estimate"). The $600,000.00 Investigation

> Budget Estimate authorization contained and approved herein may be increased by agreement of the DIP Lender and Borrower in order to pay the Examiner's fees and expenses, including those of his court authorized professionals, that may be approved by the Court which aggregate in excess of $600,000.00, and such increase is approved hereby without the necessity of any further order or notice.

7. The Investigation Budget Estimate is an amount derived and promulgated by the Debtors and the DIP Lender without the participation of the Examiner solely for the purposes of the DIP Lender's internal accounting purposes. Notwithstanding anything to the contrary in this Order, the DIP Order or the DIP Credit Agreement, the Investigation Budget Estimate shall not be a cap on the fees and expenses of the Examiner and his professionals, and the proceeds of the Revolving Loan, the DIP Facility, the DIP Collateral, and the Carve-Out shall be used to timely satisfy all allowed fees and expenses of the Examiner and its professionals as approved by the Court and in accordance with the terms and provisions set forth in the DIP Order and the DIP Credit Agreement (to the extent modified herein), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered on March 2, 2010 [Docket No. 255].

8. Except as expressly set forth in this Order, no provision of this DIP Order, the DIP Credit Agreement, or any other order or agreement entered into by the parties in this case is modified, amended, or altered, and the entry of the Order is not, and shall not be deemed to be, a determination that there has been a default under the DIP Credit Agreement, nor a waiver of any right to declare such a default based on any facts now in existence, nor a waiver of any right to object to such a declaration of a default.

9. This Court shall retain jurisdiction over all matters related to or arising from the Motion or the interpretation or implementation of this Order.

Dated: __9/13__, 2010
Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge