IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re ) | | |
| ) | Chapter 11 | |
| ) | | |
| ANDERSON NEWS, LLC, ) | Case No. 09-10695 (CSS) | |
| ) | | |
| Debtor. ) | Hearing Date: 11/4/2013 at 11:00 a.m. | |
| ) | Objection Deadline: 10/28/2013 at 4:00 p.m. | |

**ANTITRUST DEFENDANTS' MOTION FOR PERMISSION
TO FILE UNSECURED PROOFS OF CLAIM AND FOR
LIMITED STAY RELIEF TO ASSERT ANTITRUST
COUNTERCLAIM IN PENDING ANTITRUST ACTION**

Time Inc., American Media, Inc., Hearst Communications, Inc. (as successor in interest to Hachette Filipacchi Media U.S., Inc.), Kable Distribution Services, Inc., and Rodale, Inc. (collectively, the "Antitrust Defendants"), each of which is a defendant in the action styled *Anderson News, LLC et al. v. American Media, Inc. et al.*, Case No. 09 Civ. 2227 (PAC) (S.D.N.Y.) (the "Antitrust Action"), move for permission to file proofs of claim, substantially in the form attached hereto as Exhibit A, after the bar date to assert an antitrust counterclaim, substantially in the form attached hereto as Exhibit B, against the debtor in the Antitrust Action. The Antitrust Defendants also move for relief from the automatic stay to litigate the antitrust counterclaim in the Antitrust Action. Although the bar date has passed, the Antitrust Defendants could not have filed the proofs of antitrust counterclaim before the bar date, because the counterclaim is based on an antitrust conspiracy that by its nature was secret, and because the debtor and third parties did not produce the discovery revealing the grounds for the counterclaim until after the bar date had passed. In support of this motion, the Antitrust Defendants respectfully state as follows:

## Introduction

1. For over four years, the debtor pointed its finger at the Antitrust Defendants. The debtor blames its woes on them, and argues that its largest asset is an antitrust lawsuit centered on the Antitrust Defendants' rejection of the debtor's unwarranted surcharge demand. But the discovery recently produced in the Antitrust Action now reveals that it was the debtor who secretly conspired with other wholesalers, in violation of antitrust laws, to impose the surcharge in the first place. The debtor's conspiracy caused millions of dollars of damages to the Antitrust Defendants, as is detailed in the proposed counterclaim. The debtor's agreement with its co-conspirators was secret and unknown to the Antitrust Defendants until they finally received discovery in the Antitrust Action—discovery that was delayed for years due to the District Court's dismissal of the debtor's original complaint with prejudice and the subsequent appeal and remand. Indeed, several of the Antitrust Defendants sought many of these very documents from the debtor and related parties in this chapter 11 case during the Rule 2004/Examiner phase, but the debtor designated the documents as "Antitrust Confidential" and withheld them from the Antitrust Defendants.

2. Having now become aware of the conspiracy, the Antitrust Defendants seek this Court's permission to file unsecured proofs of claim against the estate on account of the counterclaim after the expiration of the bar date. More importantly, the Antitrust Defendants seek to file a counterclaim in the Antitrust Action, for which they must obtain stay relief.

3. The legal standard for permitting a post-bar date claim is well established. The determination is an equitable one based on the totality of the circumstances. The touchstones of the inquiry are prejudice to the debtor and the reason for the delay. Absent disruption to a filed plan or distributions thereunder, prejudice will be absent. This bankruptcy case is a liquidating

chapter 11 that has been pending for over four years, and the debtor has not even filed a plan, let alone commenced distributions. And the reason for delay, when viewed in context, is more than merely "excusable": the counterclaim alleges a conspiracy, and many of the documents supporting the counterclaim were in the debtor's possession, were purposefully withheld from the Antitrust Defendants in this Court, and were produced in the Antitrust Action only recently, as the result of ongoing discovery. Thus, the Antitrust Defendants could not have asserted the counterclaim before the bar date because they did not then know it existed. Under the circumstances, the Court should allow the Antitrust Defendants to pursue the counterclaim by permitting them to file unsecured claims against the estate and should grant stay relief to allow the counterclaim to be liquidated by the District Court for the Southern District of New York, which is presiding over the Antitrust Action (the "<u>District Court</u>").

## **Background**

### A.  **The Antitrust Action**

4.  The debtor has repeatedly argued that the Antitrust Action is the centerpiece asset of its estate. The debtor filed the suit on March 10, 2009, eight days after this bankruptcy case commenced. In August 2010, the District Court granted the Antitrust Defendants' motion to dismiss and dismissed the case with prejudice and without leave to amend. *See* Antitrust Action D.I. 89 (Court's memorandum opinion and order dated August 2, 2010). The debtor appealed the dismissal, and nearly two years later the Court of Appeals reversed and remanded the case. Thus, the debtor filed an amended complaint (what is now the operative complaint) in September 2012. Soon afterward, the Antitrust Defendants filed their answers.

5.  The District Court entered a case management plan in October 2012, setting forth a discovery schedule which subsequently has been extended twice. *See* Antitrust Action

D.I. 132, 188, 213. Since then, the Antitrust Defendants have received tens of thousands of documents from the debtor and others. Under the most recent extension to the case management plan, fact discovery is scheduled to be completed by December 20, 2013, and expert discovery by April 25, 2014. *See* Antitrust Action D.I. 213, pp. 2-3.

6. Several of the Antitrust Defendants and other defendants in the Antitrust Action who asserted ordinary trade claims against the debtor (the "Magazine Creditors") filed proofs of claim for amounts owed under the parties' contracts and/or business arrangements before the June 2010 bar date that this Court had established. *See Order Establishing Bar Dates* [D.I. 307] at ¶ 1. Shortly after the District Court entered the case management order, they moved this Court for relief from the automatic stay to assert those filed claims as an affirmative defense or setoff in the Antitrust Action. *See* D.I. 1512. That relief ultimately was agreed to by stipulation, and the Court entered an order approving the stipulation. *See* D.I. 1545.

B. **The Rule 2004 Discovery Process**

7. In February 2010, before the District Court's dismissal of the debtor's original complaint in August 2010, certain of the Magazine Creditors moved for Rule 2004 discovery in this Court, while others sought the appointment of a trustee, a creditors' committee or an examiner. *See* D.I. 273, 275, 311. The debtor objected to all of the relief requested in these motions, other than to appointment of an examiner. The Court granted the Rule 2004 motion and ordered the appointment of an examiner. In general, the Court required that all documents turned over to the examiner also be produced to the Magazine Creditors under the Rule 2004 request, with one major exception: the debtor was authorized to withhold from the Magazine Creditors any discovery relating to the Antitrust Action. *See Order Granting Motion of Certain Magazine Creditors for an Order Authorizing Examinations Pursuant to Bankruptcy Rule 2004*

[D.I. 314], at ¶ 5 ("discovery shall not be permitted on whether the Debtor should or should not have imposed alleged price increases or on alleged collusion by the defendants in [the Antitrust Action]"). A subsequent confidentiality order entered in this case allowed the debtor to designate discovery produced to the examiner as "Antitrust Confidential," in which case the discovery would not be shared with the Magazine Creditors. *See Stipulation and Confidentiality Order* [D.I. 444] at ¶ 7.

### C. The Newly Produced Documents

8. As a result of the debtor's desire to withhold the production of antitrust-related documents from the Magazine Creditors in the bankruptcy case and its ability to do so based on the "Antitrust Confidential" designation, the Antitrust Defendants have seen these documents, and additional documents produced by the debtor in the Antitrust Action pursuant to related document requests, for the first time as part of the debtor's recent document productions in the Antitrust Action. The documents tell a remarkable story: they show that *the debtor* conspired with the largest magazine wholesaler, and solicited the agreement of another major wholesaler, to impose the seven-cent surcharge on publishers. The documents show that the debtor concluded from past experience that if it unilaterally attempted to impose a surcharge on the publishers, the publishers would balk and the effort would fail. So the debtor concocted a scheme by which it acted in concert with the largest national wholesaler, and sought to act in concert with the next-largest national wholesaler, to provide a unified front that it believed the publishers would be unable to resist. These three wholesalers controlled about 75% of the sales of single-copy magazines in the United States, and an even higher percentage in certain regions.

9. Thus, ironically, it was the debtor that conspired in violation of the antitrust laws to impose its surcharge demands. (Because of the "Highly Confidential" designation by entities

that produced these documents, the Antitrust Defendants refer the Court to Exhibit B hereto for more detail.) While the debtor ultimately did not succeed in extracting its surcharge demand from publishers, its price-fixing conspiracy wreaked millions of dollars of damage on the Antitrust Defendants. The debtor's agreement with its conspirators was unknown to anyone not participating in the scheme.

10. Moreover, it is clear that the debtor and its affiliates abused the "Antitrust Confidential" designation. This Court's order permitted the withholding of documents about "whether the debtor should or should not have imposed alleged price increases or collusion by the defendants in [the Antitrust Action]." Nothing in the order permitted the withholding, as "Antitrust Confidential," of documents that show the *debtor's* conspiracy. Several of the withheld documents reveal collusion by the debtor and others and do not concern either whether the debtor should have imposed a price increase or whether the Antitrust Defendants colluded.

11. Based on this newly-discovered evidence that was produced to them recently and for the first time in the Antitrust Action, the Antitrust Defendants now seek to assert a counterclaim against the debtor. But in the years since the Antitrust Action was dismissed, appealed and remanded, the bar date has run. *See Order Establishing Bar Dates* [D.I. 307] at ¶ 1 (June 2010 bar date). The Antitrust Defendants therefore request that the Court allow them to file post-bar date proofs of claim that will assert an unsecured claim against the estate based on the counterclaim. The Antitrust Defendants also request that the Court lift the automatic stay to the extent necessary to allow the counterclaim to be litigated as part and parcel of the Antitrust Action, where it belongs.

**Argument**

I. **The Court Should Grant Leave To File Post-Bar Date Claims Relating To The Counterclaim, Because The Claims Will Not Cause Any Prejudice And Because There Was Good Reason Why The Claims Could Not Have Been Filed Any Earlier**

12. Whether to allow a post-bar date proof of claim is an equitable determination taking into account all of the surrounding circumstances. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993). These circumstances include what have come to be known as the "*Pioneer* factors": "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

13. "Prejudice" means prejudice to the success of the reorganization. *See Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 188 F.3d 116, 125 (3d Cir. 1999) (bankruptcy court should "balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization"); *id.* at 126 (prejudice requires more than fact that plan does not set aside money to pay the claim at issue or that resources available to pay other claims will be diminished). In a liquidating chapter 11 case, like this one, "[a]llowance of a late claim … will generally merely result in a slightly different distribution of a liquidating debtor's assets." *In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995). "Exactly how the debtor's assets are distributed is ultimately of little consequence to the debtor, so long as the claim is not filed so late as to disrupt the distribution process." *Id.*

14. Here, allowing the Antitrust Defendants to file unsecured claims on account of their antitrust counterclaim will not prejudice the success of any reorganization. This is a liquidating chapter 11 case in which the debtor has no operating business to reorganize. The debtor has not yet filed a plan, it has not begun objecting to claims, and it has not made distributions that it would have to claw back, because it currently has no material assets to

7

distribute. Thus, there is no reorganization to disrupt, no distribution process to disturb, and hence no prejudice to the reorganization.

15. The length of the "delay" here does not impact upon any judicial proceedings. In addition, mere delay alone, viewed without context, is insufficient to warrant denial of a motion to permit a late filed claim. *See, e.g., Plains Marketing, L.P. v. Bank of America, N.A. (In re SemCrude, L.P.)*, 443 B.R. 472, 482 (Bankr. D. Del. 2011). Rather, the delay must be linked to prejudice. *See, e.g., Hatzel & Bueler, Inc. v. Station Plaza Assocs., L.P.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993) (to deny as too late a motion to amend counterclaim, "the delay must be motivated by bad faith or result in prejudice to the opposing party"); *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1197 (3d Cir. 1994) ("this Court has repeatedly stated outright that unexcused delay unaccompanied by real detriment to the defendant or to the judiciary does not constitute undue delay"). Here, the length of time must be assessed in light of the posture of the Antitrust Action, which was delayed for years because of the appeal, and in which discovery did not commence until well after the bar date expired. Given that discovery is still ongoing, this timing has not caused any prejudice or burden on the debtor, as there is no plan or distribution to jeopardize, and the administration of this estate apparently will await the conclusion of the Antitrust Action.

16. Likewise, the reason for the "delay" counsels in favor of allowing the claims. The Antitrust Defendants belatedly became aware of the debtor's conspiracy, but not because of any inadvertence: rather, the conspiracy was by its nature a secret, discoverable only by reference to documents in the debtor's possession that the debtor withheld from the Magazine Creditors in this bankruptcy case by designating them as "Antitrust Confidential" and other documents only recently produced by the debtor and others in response to requests for production in the Antitrust

Action. Because of the procedural history of the Antitrust Action (*i.e.*, dismissal and appeal), no discovery could commence until after September 2012, when the case was returned to the District Court and plaintiffs filed their amended complaint, more than two years after the bar date expired. Under the circumstances, the Antitrust Defendants cannot be faulted for not filing a claim in 2010 that they could not have known existed until years later.

17.     Indeed, in a similar situation, a federal district court in New York recently denied a debtor's discharge defense to a post-confirmation claim alleging an antitrust conspiracy to fix surcharges. The court held that as a member of the conspiracy, the debtor was aware of the claim, but the creditor asserting the claim could not have been aware of the claim because the conspiracy was secret. *See DPWN Holdings (USA) v. United Air Lines, Inc.*, 871 F.Supp.2d 143, 157 (E.D.N.Y. 2012) ("Accepting the allegations in the complaint as true, the debtor was well aware of its involvement in a conspiracy to fix surcharges, and, thus, of the antitrust claim against it. On the other hand, the claimant was completely unaware of the antitrust conspiracy...."). This case is even more compelling than *DPWN Holding*, because the Antitrust Defendants do not seek relief from a plan discharge, but instead seek to assert a pre-plan, pre-distribution unsecured claim against a liquidating debtor that will be prosecuted in tandem with the debtor's own claims against the Antitrust Defendants. Additionally, it would be inequitable for the debtor to capitalize on the bar date to block the claims after it produced documents probative of those claims only long after the bar date.

18.     Finally, the Antitrust Defendants are acting in good faith. The delay was not purposeful and will not result in any unfair advantage to the Antitrust Defendants.

19.     Taking into account the circumstances, including the lack of prejudice to the estate and the legitimate reason for delay, the Court should find that Antitrust Defendants meet

the *Pioneer* standard to allow the filing of post-bar date unsecured proofs of claim on account of the counterclaim.

II. **Cause Exists To Lift The Automatic Stay To Allow Prosecution Of The Counterclaim In The Antitrust Action**

20. A court may grant relief from the automatic stay for "cause," a flexible term that is based on the totality of the circumstances. *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). Courts in this district examine three factors when assessing cause:

(1) whether lifting the stay will cause any great prejudice to the bankruptcy estate;

(2) whether the hardship to the creditor by maintenance of the stay considerably outweighs the hardship to the debtor; and

(3) the probability of the creditor prevailing on the merits.

*In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Other factors that courts consider include: (1) "whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary"; (2) "whether modifying the stay will promote judicial economy"; and (3) whether the estate can be protected by requiring that claims against the estate arising from a judgment be enforced through the claims allowance process. *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992). The Court also may consider the general policies underlying stay relief. *SCO Group*, 395 B.R. at 857, 859-60 (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1287 (2d Cir. 1990)). These policies include avoiding duplicative litigations and promoting judicial economy by letting an action proceed as a whole in the non-bankruptcy court in which it originated. *Rexene*, 141 B.R. at 576, 578. Once a *prima facie* showing of cause is made, the burden shifts to an objecting party to show why stay relief is not warranted. 11 U.S.C. § 362(g).

21. If the Court allows the Antitrust Defendants to file proofs of claim relating to the counterclaim, the same reasons that led it to do so will also justify lifting the stay to allow the claim to be liquidated as part of the Antitrust Action. The District Court has institutional knowledge of the case and familiarity with the antitrust issues it presents. Moreover, the facts giving rise to the complaint and counterclaim are integrally related and certainly will be considered together in any trial, with or without the counterclaim. It would not make sense to relitigate the counterclaim anywhere else.

22. Taking the *Rexene* factors one by one, lifting the stay will not prejudice the estate because the debtor already is pressing forward with the Antitrust Action. Thus, there is no "breathing spell" that needs maintaining, since the litigation already is active. And there is no "distraction to management" that is not already occurring by virtue of the debtor's prosecution of the case. In any event, "distraction to management" is a meaningless concept here, where there is no operating business and in essence this debtor's sole function is litigation. The bottom line is that resolving the Antitrust Action is a necessary step to administering this four-year old bankruptcy estate, and hence so is resolving the counterclaim that has arisen as part of that litigation.

23. By contrast, maintaining the stay would prejudice the Antitrust Defendants by denying them the opportunity to assert their counterclaim in the Antitrust Action, which is the only feasible forum in which the claim can be asserted. Courts considering analogous circumstances have concluded that counterclaims against a debtor should be resolved at the same time by the same court overseeing the debtor's claims. *See, e.g., Prindle v. Countryside Manor, Inc. (In re Countryside Manor, Inc.)*, 188 B.R. 489, 491 (Bankr. D. Conn. 1995) ("The issues to be decided in the counterclaim . . . do not involve questions directed to the expertise of the

bankruptcy court. The administration of justice, convenience of the parties and judicial economy are better served by having all the claims and counterclaims resolved by the same court . . . ."); *Fox & Co. v. Saxon Indus., Inc. (In re Saxon Indus., Inc.)*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) ("it would clearly be inequitable to allow [the debtor] to use § 362 to prevent Fox from pressing counterclaims"). The only other option is to litigate the counterclaim separately in this Court, but proceeding on a dual track like that is not feasible and is exactly the type of "unnecessary, duplicative litigation" that stay relief is designed to avoid. *See Rexene*, 141 B.R. at 577. "Judicial economy dictates a prompt resolution in a single forum with the same judge who was originally assigned to the case," a result that is particularly warranted here in light of the debtor's active prosecution of the Antitrust Action before Judge Crotty. *Id.* Trying an antitrust counterclaim in this Court also would be highly problematic, especially since this Court has previously stressed several times that all antitrust matters should be heard only in the Antitrust Action.

24.    In addition, as set forth above, the Court already has lifted the automatic stay to allow the Magazine Creditors to assert their existing proofs of claim as a setoff in the Antitrust Action. Those existing proofs of claim are unrelated to the Antitrust Action itself. Thus, the logic of lifting the stay is even more compelling here than it was in that prior order, because the new counterclaim is in fact related to the allegations in the Antitrust Action.

25.    Finally, the last *Rexene* factor, a colorable claim, is established here. Under *Rexene*, "[t]he required showing is very slight." 141 B.R. at 578. "[A]ll that is required is that the movant make more than a vague initial showing that he can establish a prima facie case." *Santa Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.)*, 382 B.R. 652, 691 (Bankr. D. Del. 2008) (internal quotation omitted), *rev'd on other grounds*, 400 B.R. 420 (D. Del. 2009).

The counterclaim, as set forth in Exhibit B to this motion, establishes that the Antitrust Defendants' claims are more than merely colorable, and no more is needed for stay relief purposes. *See, e.g., Biggs v. Stovin (In re Luz Int'l, Ltd)*, 219 B.R. 837, 842 (B.A.P. 9th Cir. 1998) ("most courts hold that motion for relief from stay hearings should not involve an adjudication of the merits of claims, defenses or counterclaims . . . .").

26.  Accordingly, the Antitrust Defendants have established *prima facie* cause for relief from the stay to allow the antitrust counterclaim to be litigated as part of the Antitrust Action, subject to similar limitations as were imposed in the prior stay relief stipulation that permitted litigation there of the Magazine Creditors' proofs of claim.

## Conclusion

27.  Because permitting the antitrust counterclaim would not prejudice the debtor's estate, the Antitrust Defendants respectfully request that the Court enter the attached proposed order granting this motion, permitting the filing of proofs of claim, lifting the automatic stay and granting such other and further relief as the Court deems just and proper.

Dated: October 17, 2013
      Wilmington, Delaware

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER**<br>_/s/_<br>Russell C. Silberglied (No. 3462)<br>Cory D. Kandestin (No. 5025)<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br><br>-and-<br><br>**CRAVATH, SWAINE & MOORE LLP**<br><br>Richard Levin (*pro hac vice*)<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Telephone: (212) 474-1000<br>Facsimile: (212) 474-3700<br><br>*Counsel to Time Inc.* | **RICHARDS, LAYTON & FINGER**<br>_/s/_<br>Russell C. Silberglied (No. 3462)<br>Cory D. Kandestin (No. 5025)<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br><br>-and-<br><br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br><br>David G. Keyko<br>1540 Broadway<br>New York, NY 10036<br>Telephone: (212) 858-1000<br>Facsimile: (212) 858-1500<br><br>*Counsel to American Media, Inc.* |

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER** | **DRINKER BIDDLE & REATH LLP** |

/s/ Howard A. Cohen

Russell C. Silberglied (No. 3462)
Cory D. Kandestin (No. 5025)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-on behalf of-

**HEARST CORPORATION OFFICE OF GENERAL COUNSEL**

Jonathan R. Donnellan
Kristina E. Findikyan
Eva M. Saketkoo
300 West 57th Street, 40th Floor
New York, NY 10019

*Counsel to Hearst Communications, Inc. (as successor in interest to Hachette Filipacchi Media U.S., Inc.)*

Howard A. Cohen (DE 4082)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1254
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

-and-

**BRYAN CAVE LLP**

Stephanie Wickouski
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-1114
Facsimile: (212) 904-0514

*Counsel to Kable Distribution Services, Inc.*

**RICHARDS, LAYTON & FINGER**

/s/

Russell C. Silberglied (No. 3462)
Cory D. Kandestin (No. 5025)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-on behalf of-

**ROSENBERG & ESTIS, P.C.**

John M. Hadlock
Alexander Lycoyannis
733 Third Avenue
New York, NY 10017

*Counsel to Rodale, Inc.*