IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ANDERSON NEWS, LLC, | : | Case No. 09-10695 (CSS) |
| | : | |
| Debtor. | : | |
| _____ | : | |
| AMERICAN MEDIA, INC., BAUER | : | |
| MAGAZINE L.P., BAUER PUBLISHING | : | |
| COMPANY, L.P., HEINRICH BAUER | : | |
| NORTH AMERICA, INC., HEINRICH | : | |
| BAUER PUBLISHING, L.P., CURTIS | : | |
| CIRCULATION COMPANY, LLC, | : | |
| KABLE DISTRUBITION SERVICES, | : | |
| INC., and TIME WARNER RETAIL | : | |
| SALES & MARKETING, INC., | : | |
| on behalf ANDERSON NEWS, LLC, | : | |
| DEBTOR and DEBTOR IN POSSESSION | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. Proc. No. 11-53811 (CSS) |
| | : | |
| ANDERSON MANAGEMENT | : | Related Document Nos.: 325 and 330 |
| SERVICES, INC., ANDERSON MEDIA | : | |
| CORPORATION, ANDERSON NEWS | : | |
| COMPANY SOUTHWEST, LLC, | : | |
| ANDERSON SERVICES, LLC, | : | |
| BROOKVALE HOLDINGS, LLC, | : | |
| DISPLAY SERVICES, INC., FIRST | : | |
| MEDIA CAPITAL CORPORATION, | : | |
| MSOLUTIONS, LLC, PROLOGIX | : | |
| DISTRIBUTION SERVICES EAST, LLC, | : | |
| And TWIN RIVERS TECHNOLOGY | : | |
| GROUP, LLC. | : | |
| | : | |
| Defendants. | : | |

**OPINION**

**KLEHR HARRISON HARVEY BRANZBURG**
Domenic E. Pacitti
919 Market Street, Suite 1000
Wilmington, DE 19801
         -and-
Morton R. Branzburg
1835 Market Street, Suite 1400
Philadelphia, PA 19103

**OF COUNSEL:**
**ALSTON & BIRD LLP**
Grant T. Stein
David A. Wender
1201 West Peachtree Street
Atlanta, GA 30309

Counsel to Anderson Media
Corporation and First Media
Capital Corporation

**POTTER ANDERSON & CORROON LLP**
Stephen C. Norman
Jeremy W. Ryan
D. Ryan Slaugh
1313 N. Market Street, 6th Floor
Wilmington, DE 19801

**OF COUNSEL:**
**VALLE MAKOFF LLP**
Jeffrey B. Valle
11911 San Vicente Blvd, Suite 324
Los Angeles, CA 90049

Counsel of American Media, Inc., Bauer
Magazine L.P., Bauer Publishing Co.,
L.P., Heinrich Bauer North American,
Inc., Circulation Company, Kable
Distribution Services, Inc., and Time/
Warner Retail Sales & Marketing, Inc.

Dated: May 4, 2020

Sontchi, C.J._____

### INTRODUCTION[1]

Before the Court are dueling motions to compel discovery responses. AMC and

FMC filed their *Renewed Motion to Compel*, seeking relief for six discovery items as they

pertain to Plaintiffs' discovery responses; and Plaintiffs filed their *(Refiled) Motion to

Compel*, seeking relief for two discovery items as they pertain to Defendants' responses to

discovery.

---

[1] Capitalized terms used herein shall have the meaning ascribed to them *infra*.

## JURISDICTION & VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

## STATEMENT OF FACTS

On March 2, 2009 (the "Petition Date"), certain creditors of Anderson News, LLC (the "Debtor") filed petitions to institute an involuntary bankruptcy of the Debtor pursuant to Chapter 7 of the Bankruptcy Code (the "Code").[2] On November 14, 2011, American Media, Inc., Bauer Magazine L.P., Bauer Publishing Company, L.P., Heinrich Bauer North American, Inc., Heinrich Bauer Publishing, L.P., Curtis Circulation Company, Kable Distribution Services, Inc., and Time/Warner Retain Sales & Marketing, Inc. ("Time") (collectively, "Plaintiffs") filed their complaint in this adversary proceeding against Anderson Management Services, Inc., Anderson Media Corporation ("AMC"), Anderson News Company Southwest, LLC, Anderson Services, LLC, Brookvale Holdings LLC, Display Services, Inc., First Media Capital Corporation ("FMC"), MSolutions, LLC, and Twin Rivers Technology Group, LLC (collectively, "Defendants") seeking to avoid and recover certain preferences and fraudulent transfers pursuant to sections 547 and 548 of the Code and sections 1304 and 1305 of Delaware's Uniform Fraudulent Transfer Act, 6 Del. C. §§ 1301 *et seq.* ("DUFTA") ("Plaintiffs' Complaint").[3]

---

[2] Case No. 09-10695 [D.I. 1].
[3] *Complaint*, Adv. Proc. No. 11-53811 [D.I. 1].

On February 5, 2015, AMC and FMC (together, "Movants") filed a motion to compel with respect to certain July 7, 2014 discovery responses from Plaintiffs.[4] On September 9, 2019, Movants filed their Renewed Motion to Compel with respect to the aforementioned discovery responses from Plaintiffs.[5] Movants' Renewed Motion to Compel seeks relief as it pertains to the responses to the following six discovery items: (1) AMC Document Request 3; (2) AMC Document Request 4; (3) AMC Document Request 5; (4) FMC Interrogatories 7 and 8 and Document Request 1; (5) AMC Interrogatory 12 and Document Requests 1 and 6; and (6) General Objections 10, 11 and 12 to Movants' Interrogatories.[6]

Meanwhile, on March 7, 2015, Plaintiffs filed a motion to compel with respect to certain responses made by Defendants to discovery requests served by Plaintiffs in March and April 2014.[7] On September 23, 2019, Plaintiffs filed their (Refiled) Motion to Compel with respect to Defendants' responses to Plaintiffs' March and April 2014 discovery

---

[4] *Motion to Compel with Respect to the Plaintiffs' July 7, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 208].

[5] *Renewed Motion to Compel with Respect to the Plaintiffs' July 7, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 325].

[6] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at ¶¶ 8, 36–42.

[7] *Plaintiffs' Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 238].

requests.[8] Plaintiffs' (Refiled) Motion to Compel seeks relief as it pertains to the following

two discovery items: (1) Plaintiffs Interrogatory 1; and (2) Plaintiffs Interrogatory 5.[9]

## LEGAL DISCUSSION

### A.  Standard of Review

Motions to compel discovery are governed by Federal Rule of Civil Procedure 37,

made applicable pursuant to Federal Rules of Bankruptcy Procedure 7001 and 7037.

Motions made pursuant to Bankruptcy Rule 7037 must also be made in accordance with

the Court's Local Rule 7026-1(c). When considering Bankruptcy Rule 7037 motions, the

Court must first determine whether the item sought to be compelled is "discoverable."

Bankruptcy Rule 7026(b)(1), provides that discovery may be had of "any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of

the case." "Information can be relevant even if it only leads to other relevant

information."[10] Bankruptcy Rule 7026(b)(1) further indicates that information need not

be admissible at trial in order to be considered relevant in discovery. "Relevant material

may subsequently be protected from discovery by proper claims of privilege, but the

initial question is relevance."[11] Because the standard for discovery is broad, "discovery is

---

[8] *Plaintiffs' (Refiled) Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 330].

[9] *Plaintiffs' (Refiled) Memorandum in Support of Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 331], at 13, 16.

[10] *CSC Trust Co. of Del. v. Energy Future Intermediate Holdings Co. LLC (In re Energy Future Holdings Corp.)*, 513 B.R. 651, 656–57 (Bankr. D. Del. 2014).

[11] *Id.* at 657.

ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action."[12] Nevertheless, when an objection has been raised regarding a discovery item's relevancy, "the party seeking the discovery bears the burden of demonstrating the relevance of the sought information to the claims, defenses, or the subject matter of the litigation."[13]

### B. Discovery Requests in Movants' Renewed Motion to Compel

As a preliminary matter, the Court dispels Plaintiffs' argument that the Debtor's valuation and solvency in 2001-2003 is somehow irrelevant as a result of the Great Recession of 2007-2009 and, thus, non-discoverable.[14] So long as the items sought-to-be-discovered contain relevant, non-privileged information proportional to the needs of the case, the economic turbulence of 2007-2009 does not, without more, make information from 2001-2003 either irrelevant or undiscoverable.

### 1. AMC Document Request 3

First, Movants seek production of all "Credit Files" in Plaintiffs' possession pertaining to the Debtor for the approximately four-year period from January 1, 2005 to March 2, 2009.[15] Movants aver that the Credit Files are relevant to the issue of the Debtor's

---

[12] *In re NewStarcom Holdings, Inc.*, 514 B.R. 394, 399–400 (Bankr. D. Del. 2014) (citations and quotations omitted).

[13] *In re Energy Future Holdings Corp.*, 513 B.R. at 657.

[14] *See Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 12 ("Among other things, (1) the Great Recession took place from 2007–09, plainly making any economic views from 2001–03 completely irrelevant in 2009.") (citations omitted).

[15] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at ¶ 8.

solvency under sections 547 and 548 of the Code and sections 1304 and 1305 of DUFTA because the Credit Files will (1) verify the amount of each Plaintiffs' claims at the time of each challenged transfer,[16] (2) confirm whether the Debtor was paying the debts of its most significant creditors when they came due,[17] and (3) "reflect Plaintiffs' opinion that the Debtor was a viable going concern and did not present a credit risk."[18] Plaintiffs object to Movants request, arguing that (1) Plaintiffs' credit files are irrelevant in a valuation of the Debtor,[19] (2) notwithstanding their irrelevance, Plaintiffs have already confirmed with Movants that they have no such credit files,[20] (3) Movants' definition of Credit Files is overly broad and unduly burdensome,[21] and (4) to the extent any such additional documents exist which fit within Movants' expansive definition, the documents have already been searched for and produced by Plaintiffs in the Antitrust Action.[22]

The Court concludes that Plaintiffs must produce any Credit Files they have not yet produced. In so concluding, the Court must first address the discrepancy between the Credit Files sought by Movants and the credit files described by Plaintiffs in their

---

[16] *Id.* at ¶ 18.

[17] *Id.* at ¶ 19.

[18] *Id.* at ¶ 20.

[19] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 6.

[20] *Id.*

[21] *Id.* at 7, fn.6.

[22] *Id.* at 7. The "Antitrust Action" describes the complex and lengthy case between the Debtor and Anderson Services, LLC (collectively, the plaintiffs in the Antitrust Action) and certain of the Plaintiffs (defendants in the Antitrust Action), which was heard by Judge Crotty in the Southern District of New York, case number 09-cv-02227-PAC.

discovery objection. Movants define "Credit Files" within the lines of AMC Document Request 3 as "any Document or other Communication which reflects, relates or refers to the economic condition of the Debtor or [Plaintiffs'] determination to extend credit or other financial accommodations to the Debtor or otherwise to do business with the Debtor."[23] But at footnote six of Plaintiffs' Memorandum in Opposition, Plaintiffs assert that Movants "are not seeking actual credit files, but rather each and every individual document that 'reflects, relates or refers to the economic condition of the Debtor.'"[24] In so doing, Plaintiffs signal to the Court that while they had  presumably searched for certain lowercase "C" credit files, Plaintiffs may have not actually searched for the capital "C" Credit Files plainly defined in AMC Document Request 3. Because the Court will not rewrite Movants' definition, the Court's analysis operates under the understanding that the term "Credit Files" means what Movants defined it as in AMC Document Request 3.

As for whether Movants' definition of "Credit Files" is overly broad or unduly burdensome, the Court considers case law from the District Court in this jurisdiction.  In the patent infringement case *Invensas Corp. v. Renesas Elecs. Corp.*, plaintiff served certain interrogatories and document requests upon defendant which used the term "Your Products."[25] In response to the interrogatories and document requests, defendant

---

[23] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at 8 (Section II.A).

[24] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336],  at 7, fn.6 (quoting *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at 8 (Section II.A)).

[25] *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 275–76 (D. Del. 2012).

"objected to the definition of 'Your Products' generally as 'overly broad, unduly burdensome, oppressive, and/or irrelevant to the subject matter of [the] action'" and "further objected to [the] term 'to the extent it purports to include within the scope of discovery products which have not been accused of infringement.'"[26] After failing to reach certain agreement as to narrowing the term's definition, plaintiff filed a motion to compel regarding the items described by their definition of "Your Products."[27] The District Court held a teleconference and yet again the dispute was not resolved amicably; it was defendant's position that plaintiff's definition and revised definition of "Your Products" exceeded the scope of discovery as it pertained to the particular product involved in the patent infringement dispute.[28] In deciding whether plaintiff's term was overly broad and unduly burdensome, the District Court employed the standard for Rule 26.[29] The District Court noted that the "scope of relevant information, as that phrase is used in Rule 26, will vary depending on the type of case to which it has applied."[30] In patent infringement cases, the scope of relevancy is limited only to the product accused of the patent infringement.[31] Because plaintiff's definition of the term "Your Products"

---

[26] *Id.* at 276.

[27] *Id.* at 277.

[28] *Id.* at 277–78.

[29] *Id.* at 278 ("In *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed.Cir.1990), the Federal Circuit noted that in determining the proper scope of discovery in a patent case, a court must first establish whether or not the requested discovery is relevant.")

[30] *Id.*

[31] *Id.* at 287.

included more products than the one accused of patent infringement, the District Court

concluded that plaintiff's definition exceeded the applicable scope of relevancy and was

therefore overly broad.[32]

The lesson the Court takes from the *Invensas* decision is this: so long as a discovery

request meets the Rule 26 requirements (that the request is of relevant, non-privileged

information proportional to the needs of the case) in the context of the issue presently

before the Court, the request is neither overly broad nor unduly burdensome. As such,

the Court considers the issue of relevancy.

In this instance, Movants desire information on Plaintiffs' valuation of the Debtor

because Plaintiffs' valuation of the Debtor is relevant to the issue of solvency, which is an

issue present in both sections 547 and 548 of the Code and sections 1304 and 1305 of

DUFTA.[33] The Court concludes that Plaintiffs' valuation of the Debtor is relevant in this

proceeding because Plaintiffs' assessment whether to extend credit to the Debtor goes to

the issue of the Debtor's solvency.

In reaching this conclusion, the Court relies on *Gordon v. Rogich (In re Alpha*

*Protective Servs., Inc.)*.[34] In *Alpha Protective Services*, the court considered whether

defendant, who advanced $100,000 to help the debtor meet payroll obligations as a result

---

[32] *Id.* ("The Court believes that, in light of the strength of the parties' respective presentations, Defendant's proposal comes far closer (as compared to Plaintiff's discovery requests) to balance the competing interests set forth in the law as to discovery of unaccused products.").

[33] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at ¶ 20.

[34] *Gordon v. Rogich (In re Alpha Protective Servs., Inc.*, 593 B.R. 364 (Bankr. M.D. Ga. 2018).

of certain cash flow problems, had reasonable cause pursuant to 28 U.S.C. § 3304(a)(2)(B) to believe that the debtor was insolvent at the time of the transfer.[35] Critically, defendant was aware that the debtor was in the process of attempting to obtain a line of credit from Bank of America to address its cash flow problem when defendant made the $100,000 transfer.[36] The *Alpha Protective Services* court concluded that defendant's willingness to make the $100,000 transfer to the debtor was reasonable because defendant relied on Bank of America's conclusion to lend the debtor money and "Bank of America would [not] have extended a multi-million dollar loan to a company the bank believed was insolvent."[37] The *Alpha Protective Services* court further provided that Bank of America's due diligence in making the determination to extend to the debtor the line of credit "far exceeded the reasonably diligent inquiry expected of an inquirer in this case."[38]

Although Plaintiffs argue that *Alpha Protective Services* is distinguishable from the matter before the Court because Plaintiffs here are not a bank and therefore do not engage in the same type of due diligence,[39] the Court agrees with Movants that, at least in this instance, it is a distinction without a difference. Indeed, the *Alpha Protective Services* court's saying that the bank's due diligence "far exceeded the reasonably diligent inquiry expected" implies that something less than Bank of America's process would have been

---

[35] *Id.* at 368–69.

[36] *Id.* at 372.

[37] *Id.* at 380.
[38] *Id.*

[39] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 9.

sufficient in forming defendant's reasonable belief that the debtor there was solvent.[40]

Applying the same here, the Court concludes that Plaintiffs' valuation of the Debtor as a

third party is pertinent to the issue of solvency. Because Movants seek the Credit Files to

determine and understand Plaintiffs' valuation of the Debtor, and because the valuation

of the Debtor is pertinent to the issue of solvency, the Court concludes that the Credit

Files are relevant to the issue of solvency. As a result of their relevancy and in reliance on

the *Invensas* decision, the Court further concludes that Movants' definition of "Credit

Files" is neither overly broad nor unduly burdensome.

Lastly, the Court turns to Plaintiffs' suggestion that they have already searched for

and produced all credit files and therefore need not conduct any further searches or

production. As the Court explains above, Plaintiffs' use of lowercase "C" credit files

throughout their memorandum concerns the Court to the extent that Plaintiffs may not

have successfully searched for and produced certain capital "C" Credit Files. As such, the

Court cannot accept Plaintiffs' assertion that Movants already have access to documents

from the Antitrust Action described by the term "Credit Files."

For the foregoing reasons, the Court will grant Movants' motion to compel with

respect to AMC Document Request 3.

   *2.  AMC Document Request 4*

Second, Movants seek production of all documents summarizing transactions

between the Debtor and Plaintiffs for the period from January 1, 2008 to the date on which

---

[40] *In re Alpha Protective Servs., Inc.*, 593 B.R. at 380.

Plaintiffs fulfill such production.[41] Movants suggest that this request is relevant to the issue of the Debtor's solvency and that it is reasonably calculated because by requesting summaries, Movants seek to minimize the amount of information produced.[42] Plaintiffs object to this discovery request by arguing that (1) transactions between the Debtor and Plaintiffs are not relevant to the valuation of the Debtors' entire enterprise,[43] and (2) Movants "do not and cannot show that the burdensome task of locating and producing all invoices, purchase orders and other transaction documents would result in documents or information material to any disputed issue in this case."[44]

For substantially the same reasons as listed above, the Court concludes that Plaintiffs must produce the summaries requested in AMC Document Request 4.  As such, the Court will grant Movants' motion to compel with respect to AMC Document Request 4.

### 3. AMC Document Request 5

Third, Movants seek production of documents related to Plaintiffs' interest in the Debtor as a possible investment, including documents reflecting the value or valuation of the Debtor, for the period from January 1, 2003 to the date on which Plaintiffs fulfill

---

[41] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at 15 (Section II.B).

[42] *Id.* at ¶ 23.

[43] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 10.

[44] *Id.* (*quoting In re Energy Future Holdings Corp.*, 513 B.R. at 657.

such production.[45] Movants seek this information because of certain previously produced documents which they assert establishes that Time considered investing in the Debtor.[46] Movants also aver that such production includes documents held by outside counsel.[47] Plaintiffs oppose production because it suggests that (1) Time has nothing further to produce,[48] and (2) Plaintiffs are not responsible for production of documents held by outside counsel because Movants' definitions of "YOU" and "YOUR" in the discovery request refer only to Plaintiffs.[49]

The Court concludes that Plaintiffs must produce the documents request in AMC Document Request 5. First, for substantially the same reasons as listed above, the Court acknowledges that Plaintiffs' valuation of the Debtor is pertinent to the Debtor's solvency and solvency is a relevant issue here. Second, Plaintiffs' conception that it does not need to search for and produce documents held by outside council as a result of the words "YOU" and "YOUR" is incorrect. Although there is no case law directly on point in this District, it appears uncontroversial that things held by a party's outside counsel are still within that party's control.[50] Furthermore, "YOU" and "YOUR" are defined to

---

[45] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at 15 (Section II.C).

[46] *Id.* at ¶ 24.

[47] *Id.*

[48] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 11.

[49] *Id.* at 12.

[50] *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 2013 WL 139560, at *2 ("[O]ther courts in this district have held that documents held by outside counsel are in the possession, custody, and control of their clients."); *see also Wingnut Films, Ltd. v. Katji Motion Pictures Corp.*, 2007 WL 275871, at *12 ("Documents held by

14

specifically include "any person or entity acting on the Responding Party's behalf in the context of the usage," which the Court reads as including outside counsel.[51] Because "YOU" and "YOUR" refer to Plaintiffs, and because Plaintiffs' "possession, custody, or control" pursuant to Bankruptcy Rule 7034 extends to things held by outside counsel, Plaintiffs are therefore required to search for and produce those documents in the hands of their outside counsel. As such, the Court will grant Movants' motion to compel with respect to AMC Document Request 5.

4.  *FMC Interrogatories 7 and 8 and Document Request 1*

Fourth, Movants seek answers to FMC's Interrogatories 7 and 8 and production of associated documents.[52] Movants argue that the above are relevant to FMC's defense to Count II of Plaintiffs' Complaint, which seeks to avoid certain transfers by the Debtor to FMC under the theory that the transfers were a financing and, therefore, the Debtor retained all risk of loss.[53] Interrogatory 7 asks Plaintiffs to identify each and every factoring agreement entered into by one or more of the Plaintiffs during the two years preceding and one year following the Petition Date.[54] Interrogatory 8 asks for Plaintiffs

---

outside counsel that pertain to work performed for a client are within the 'possession, custody or control' of the client for purposes of [Federal] Rule 34.").

[51] *(Refiled) Declaration of David S. Shukan in Support of Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 332], Ex. E, at ¶ A.

[52] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at 17 (Section II.D).

[53] *Id.* at ¶ 26.

[54] *Id.* at 17 (Section II.D.).

to identify each and every document which shows the applicable interest rate and terms for unsecured revolving lines of credit entered into by one or more of the Plaintiffs during the same period.[55] Plaintiffs object to Interrogatory 7, asserting that they have already confirmed to Movants that no factoring agreements exist.[56] Plaintiffs also object to Interrogatory 8, asserting that "interest rates and terms on Plaintiffs' own unsecured lines of credit have no remote bearing on FMC's credit terms (or any other issue in this case)."[57] Furthermore, Plaintiffs argue that Movants are attempting to expand the reach of their requests from factoring agreements and unsecured revolving lines of credit to "true sale opinions issued in connection with the factored receivables . . . and . . . factoring-type transactions[.]"[58]

The Court concludes that Plaintiffs need not produce anything further in relation to FMC Interrogatories 7 and 8 and Document Request 1. First, Plaintiffs already confirmed with Movants that they have neither factoring agreement nor credit files.[59] Clearly, the Court cannot compel production of that for which Plaintiffs have already searched and have confirmed does not exist. Second, unlike in AMC Document Request

---

[55] *Id.*

[56] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 14.

[57] *Id.* at 14–15.

[58] *Id.* at 15, fn. 11 (internal citations and quotations omitted).

[59] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], Ex. A ("2. Time, AMI, Curtis, Kable and Bauer have confirmed that they have no factoring agreements. 3. Curtis, Kable, Bauer, Time and AMI have confirmed they have no credit files re Anderson.").

3 where Movants specifically defined "Credit Files" within the lines of the discovery request, Movants do not similarly define "factoring agreements" and "unsecured revolving line of credit" in FMC Interrogatories 7 and 8. Just as the Court did not rewrite Movants' definition of the term "Credit Files," neither will the Court rewrite Movants' interrogatories to include more than that which is requested by their plain terms. Third, although Movants aver that the term "factoring agreements" is synonymous to "factoring-type transactions," the Court is unpersuaded by Movants' only reference supporting such an assertion.[60] For the foregoing reasons, the Court will deny Movants' motion to compel with respect to FMC Interrogatories 7 and 8 and Document Request 1.

   *5.   AMC Interrogatory 12 and Document Requests 1 and 6*

   Fifth, Movants seek identification and production of all documents that summarize Plaintiffs' policies, procedures, or course of dealing with respect to unsold magazines during the four years preceding and one year following the Petition Date.[61] Movants desire this information because they believe it to be relevant to the question of the Debtor's solvency and to the value of the Debtor's magazine inventory.[62] Plaintiffs object to Movants' motion to compel (1) through reference to the Court's October 3, 2012

---

[60] *Reply in Support of Renewed Motion to Compel with Respect to the Plaintiffs' July 7, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 338], Ex. A (Movants attach at Exhibit A a copy of a post from a "Q&A Forum" by the "Topic Expert" Keith Perry from the website page https://www.proformative.com/questions/accounts-receivable-financing-vs-factoring-what-are-differences in support of the assertion that "factoring agreements" and "factoring-type transactions" are synonyms.).

[61] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at 20–21 (Section II.E).

[62] *Id.* at ¶ 35.

Order Regarding Motion to Compel,[63] and (2) because the information is irrelevant to the issue of solvency.[64]

The Order Regarding Motion to Compel provides that "(a) Plaintiffs shall produce documents to Defendants in this action simultaneously with any Plaintiffs' production of such documents in the Antitrust Action; and (b) Plaintiffs shall produce to Defendants copies of transcripts of depositions taken in the Antitrust Action when such transcripts become available to Plaintiffs."[65] But the Court, for substantially the same reasons as above, acknowledges that Debtor's return policies bear on valuation and that valuation bears on solvency. Furthermore, Plaintiffs are not only responsible for production of documents produced in the Antitrust Action, but also for production of other documents that meet this request. Therefore, the Court will grant Movants' motion to compel with respect to AMC Interrogatory 12 and Document Requests 1 and 6.

6. *General Objections 10, 11 and 12 to Movants' Interrogatories.*

Sixth, Movants seek compulsion of certain supplementary responses by Plaintiffs as they pertain to Plaintiffs' General Objections 10, 11, and 12, made in response to Movants' Interrogatories.[66] Movants argue that Plaintiffs' objections are "boilerplate"

---

[63] *Order Regarding Motion to Compel*, Adv. Proc. No. 11-53811 [D.I. 119].

[64] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 16.

[65] *Order Regarding Motion to Compel*, Adv. Proc. No. 11-53811 [D.I. 119]).

[66] *Memorandum in Support of the Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 326], at 24 (Section II.F).

18

and made without reason.[67] Plaintiffs respond that their objections were made meritoriously and with all specificity required.[68]

The Court agrees with Movants. When a party objects to a discovery request, such as in Plaintiffs' General Objections 10, 11, and 12, the objecting party must object with specificity because "the mere statement by a party that [an] interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."[69] As such, the Court will grant Movants' motion to compel supplemental interrogatory responses as they pertain to Plaintiffs' General Objections 10, 11, and 12.

### C.  Discovery Requests in Plaintiffs' (Refiled) Motion to Compel

#### 1.  Plaintiffs Interrogatory 1

First, the Court considers Plaintiffs' Interrogatory 1, which requests that Defendants "Identify each transfer that [the Defendants] received directly or indirectly from, or made directly or indirectly to, the Debtor any time from March 2, 2005 to the Petition Date, inclusive."[70] Defendants objected to Plaintiffs Interrogatory 1, pursuant to Federal Rule 33(d), made applicable pursuant to Bankruptcy Rule 7033.[71] Plaintiffs argue

---

[67] *Id.* at ¶¶ 38–39.

[68] *Plaintiffs' Memorandum in Opposition to Movants' Renewed Motion to Compel with Respect to the Plaintiffs' July, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 336], at 17.
[69] *Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982).

[70] *Plaintiffs' (Refiled) Memorandum in Support of Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 331], at 13 (emphasis omitted).

[71] *Id.*

that Defendants' reliance on Bankruptcy Rule 7033(d) is insufficient to compel Defendants' answers to Plaintiffs Interrogatory 1 be compelled.[72] In response, Defendants argue that there is no need to compel discovery because (1) Defendants satisfied their discovery obligations when they provided Plaintiff with certain supplemental responses and document productions made on September 1, 2015 and January 9, 2017,[73] or, in the alternative, (2) Defendants properly invoked Bankruptcy Rule 7033(d).[74] Plaintiffs reply to both of Defendants' arguments by suggesting that, although Defendants produced a table containing 1369 transfers pertaining to Counts VI, VII, XI, and XVI of Plaintiffs' Complaint, Defendants have failed to provide information as to all other transfers.[75]

The Court concludes that, although Defendants' invocation of Bankruptcy Rule 7033(d) was proper as to some discovery items, Plaintiffs are still entitled to certain production under Plaintiffs' Interrogatory 1. Bankruptcy Rule 7033(d) "permits a party to respond to an interrogatory by pointing to business records from which the answer to the interrogatory can be ascertained, if the 'burden of deriving or ascertaining the answer

---

[72] *Id.* at 14.

[73] *Response in Opposition to the Plaintiffs' (Refiled) Motion to Compel with Respect to the Anderson Defendants' April 21 and May 6, 2014 Discovery Responses*, Adv. Proc. No. 11-53811 [D.I. 334], at ¶ 11 (referencing *Declaration of David A. Wender in Support of the Anderson Defendants' Response in Opposition to Plaintiffs' (Refiled) Motion to Compel with Respect to the Anderson Defendants' April 21 and May 6, 2014 Discovery Requests* (hereinafter, "*Declaration of D. A. Wender*"), Adv. Proc. No. 11-53811 [D.I. 335], at Exs. A and B).
[74] *Id.* at ¶¶ 15–17.

[75] *Plaintiffs' Reply Memorandum in Further Support of Their (Refiled) Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 337], at 4.

is substantially the same for the party serving the interrogatory as for the party served.'"[76]

"However, a party answering an interrogatory in this fashion must 'specify the records . . . in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.'"[77] In this instance, Defendants produced several hundreds of pages containing transfers, including references to their Bates numbers.[78] But substantially all of the produced transfers relate to Counts VI, VII, XI, and XVI of Plaintiffs' Complaint.[79] Although the aforementioned production is satisfactory under Bankruptcy Rule 7033(d), Plaintiffs' interrogatory seeks production of "each transfer," which the Court understands as including transfers that may exist under each of Counts I through XVI, inclusive. For all Counts other than VI, VII, XI, and XVI, Defendants offer only that transfers were made within the ordinary course of business or are fair and reasonable under the circumstances.[80] Under Bankruptcy Rule 7033(d), this alone is insufficient. As such, the Court will grant Plaintiffs' motion as it pertains to Counts I, II, III, IV, V, VIII, IX, X, XII, XIII, XIV, and XV of Plaintiffs' Complaint and will deny Plaintiffs' motion as it pertains to Counts VI, VII, XI, and XVI of Plaintiffs' Complaint.

---

[76] *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2005 WL 8136574, at *1 (D. Del. Oct. 11, 2005) (quoting Federal Rule 33(d)).

[77] *Id.* (quoting Federal Rule 33(d)). *See also Directory Dividends, Inc. v. SBC Commc'ns, Inc.*, 2003 WL 23208804, at *4 (E.D. Pa. Dec. 31, 2003).

[78] *Declaration of D. A. Wender*, at Ex. B, at 16–502.
[79] *Id.*

[80] *Declaration of D. A. Wender*, at Ex. A, at 30–32.

2. *Plaintiffs Interrogatory 5*

Second, the Court considers Plaintiffs' request for compulsion of Defendants' answer to Plaintiffs Interrogatory 5.[81] Defendants object to all interrogatories subsequent to Plaintiffs Interrogatory 4 because they aver it consists of twenty-seven subparts, each of which constituting an individual interrogatory under Federal Rule 33(a)(1), made applicable pursuant to Bankruptcy Rule 7033.[82] Plaintiffs argue in response that, because each of the subparts to Plaintiffs Interrogatory 4 pertain to a single subject matter, all twenty-seven subparts must be counted collectively as part of a single interrogatory, and therefore Plaintiffs did not exceed the twenty-five interrogatory limit.[83]

The Court concludes that each subpart in Plaintiffs Interrogatory 4 is separate and discrete from the next and that Defendants are not required to answer any interrogatory beyond the twenty-fifth. Pursuant to Bankruptcy Rule 7033(a)(1), "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts[.]" Subparts are deemed "separate and discrete" when "they are not logically or factually subsumed within and necessarily related to the primary question."[84] Conversely, "[s]ubparts are treated as part of a single

---

[81] *Plaintiffs' (Refiled) Memorandum in Support of Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 331], at 19.

[82] *Id.* at 17.

[83] *Id.* at 18.

[84] *Carpenter v. Donegan*, 2012 WL 893472, at *2 (N.D.N.Y. Mar. 15, 2012) (citing *Madison v. Nesmith*, 2008 WL 619171, at *3 (N.D.N.Y. Mar. 3 2008); *Cramer v. Fedco Auto. Component Co., Inc.*, 2004 WL 1574691, at *4 (W.D.N.Y. May 26, 2004); *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 2003 WL 22326563 (D. Conn. Mar. 7, 2003)) (internal quotations omitted).

interrogatory where they are logically or factually subsumed within and necessarily related to the primary question."[85] When determining whether subparts constitute separate interrogatories, the Court neither considers whether the subparts are joined by a conjunctive word[86] nor relies on the formalism of numerical labeling.[87] The Court is therefore tasked with determining whether the subparts to Plaintiffs Interrogatory 4 are "discrete" and, if so, whether the number of subpart and whole interrogatories exceeds twenty-five.

Plaintiffs Interrogatory 4 makes the following request:

> Separately for each of the buckets identified on page 179 of Part II of the EXAMINER'S REPORT, state the dollar amount of debits and dollar amount of credits made by, received by, attributable to, and/or otherwise RELATING TO YOU, setting forth all facts and reasoning, and IDENTIFYING all DOCUMENTS, that support YOUR response.[88]

To assist the Court in determining whether the above consists of one or more interrogatories, the Court considers relevant case law. In support of their objection, Defendants cite *New Colt Holding Corp. v. RJC Holdings of Florida, Inc.* ("*New Colt*").[89] In *New Colt*, the court held that a party's first interrogatory exceeded the twenty-five interrogatory limit because the interrogatory, although singular in form, consolidated

---

[85] *Medigus Ltd. v. Endochoice, Inc.*, 2016 WL 5791409, at *1 (July 19, 2016) (citing *Waterbury v. Scribner*, 2008 WL 2018432, at *2 (E.D. Cal. May 8, 2008)) (internal quotations omitted).

[86] *Medigus Ltd.*, 2016 WL 5791409, at *1–2.

[87] *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 195 (E.D. Tex. 2016).

[88] *(Refiled) Declaration of David S. Shukan in Support of Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 332] Ex. C, at 3.

[89] *New Colt*, 2003 WL 22305141 (D. Conn. Feb 6, 2003).

multiple interrogatories in substance.[90] Specifically, the interrogatory in *New Colt* requested that plaintiffs produce certain information as it pertained to "each of the manufacturers, sellers, and models of single action revolvers" enumerated on a list containing sixty-four specific revolver models.[91] In reply to Defendants' objection, Plaintiffs rely on *Thomas v. Yates*.[92] In the *Thomas* case, the court held that the following was a single interrogatory:

> 5. Please state the annual numbers of indeterminate sentence life prisoners convicted of murder who were freed from California state prisons on parole release from January 17, 1980 through November 7, 1988.
>
>> a. With respect to each life prisoner who obtained such parole release, please state:
>>
>>> i. His or her commitment offense, i.e., whether first-degree murder or second-degree murder; and
>>>
>>> ii. The number of years he or she was incarcerated.[93]

But that the following constituted two interrogatories:

> 9. During the period November 7, 1988 through the present, how many times each year was an indeterminate sentence life prisoner whose commitment offense was murder found to be suitable for parole by a hearing panel of the Board?

---

[90] *Id.* at *1–2.

[91] *Id.* at *1.

[92] *Thomas v. Yates*, 2009 WL 3273280 (E.D. Cal. Oct. 9, 2009).

[93] *Id.* at *3.

> a. Of that number, how many were released on parole
> without having to appear before a subsequent hearing
> panel?[94]

The *Thomas* court's calculus with respect to each of the aforementioned was based on whether the subparts were logically and factually subsumed within the primary question.[95] Specifically, the *Thomas* court opined that interrogatory 5 was singular because "Subpart (a) cannot be answered without reference to the response to the inquiry contained in the first portion of Interrogatory No. 5[,]"[96] but that interrogatories 9 and 9(a) were separate because "the number of prisoners who did not have to appear before a subsequent hearing panel is not factually or logically subsumed by the primary inquiry, which asks for the number of life prisoners found suitable for parole."[97]

In this instance, the Court concludes that Plaintiffs Interrogatory 4 contains multiple interrogatories because it requests that production be made "[s]eparately for each of the buckets identified on page 179 of Part II of the EXAMINER'S REPORT."[98] Page 179 of Part II of the Examiner's Report, to which Plaintiffs Interrogatory 4 explicitly refers, contains a table entitled "Intercompany Postings by Bucket" (the "Table"). [99] The

---

[94] *Id.* at *4.

[95] *Id.* at *2–5.
[96] *Id.* at *3.

[97] *Id.* at *4.

[98] *(Refiled) Declaration of David S. Shukan in Support of Motion to Compel as to Certain Defendants' Responses to Discovery Requests Served by Plaintiffs in March and April 2014*, Adv. Proc. No. 11-53811 [D.I. 332] Ex. C, at 3. *Id.* at 7 (defining the "Examiner's Report" as "the Report of Don A. Beskrone, Esq. Examiner, dated May 12, 2011, as filed in the Chapter 11 Case (Docket #852).").

[99] *Report of Don A. Beskrone, Esq., Examiner Part II: Analysis by FTI Consulting, Inc., Consultant and Financial Advisor to the Examiner*, Case No. 09-10695 [D.I. 852-1] at 179.

Table includes over twenty rows, or "buckets."[100] Because Plaintiffs Interrogatory 4 requests separate information and documents for each of the buckets on the Table, it—like the interrogatory in *New Colt*—is made up of several interrogatories in substance. A party cannot disguise multiple interrogatories merely by authoring it in the form of one interrogatory. Consequentially, the Court concludes that the request for information and documents for each bucket on the Table is a discrete subpart and therefore counts as its own interrogatory. Furthermore, the Court is unpersuaded by the use of the *Thomas* court's calculus because it "essentially just [] restate[s] [] the term 'discrete subpart' that it is intended to define," and so "it does not add much by way of resolving power."[101] As such, the Court will deny Plaintiffs' motion to compel with respect to Plaintiffs Interrogatory 5.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant Movants' Renewed Motion to Compel as to:

1.  AMC Document Request 3.

2.  AMC Document Request 4.

3.  AMC Document Request 5.

4.  AMC Interrogatory 12 and Document Requests 1 and 6.

5.  General Objections 10, 11 and 12 to Movants' Interrogatories.

---

[100] *Id.*
[101] *Erfindergemeinschaft Uropep GbR*, 315 F.R.D. at 195.

The Court will further deny Movants' Renewed Motion to Compel as to FMC Interrogatories 7 and 8 and Plaintiffs' (Refiled) Motion to Compel as to Plaintiffs Interrogatory 5.

Finally, the Court will grant, in part, and deny, in part, Plaintiffs' (Refiled) Motion to Compel as to Plaintiffs' Interrogatory 1.

An order will be entered.